## ABEL and another *against* FITCH.

Where the defendant, in an action for overflowing the plaintiff's land, by the raising of the defendant's dam, in 1833, higher than he had a right to raise it, to rebut evidence introduced by the plaintiff, conducing to sustain his action, offered in evidence a writing, signed by *H*, and addressed to the defendant, in 1836, two years after the present controversy had commenced; in which writing, *H* stated in what manner the dam was raised at the time referred to, he having charge of the mill at that time, and having since deceased; it was held, that such writing was inadmissible, it being the mere statement of a deceased person, *post litem motam*, and not within any of the established exceptions to the rule excluding hearsay testimony.

Where a paper, signed by the parties, submitting their differences to the award of arbitrators, was before the court and jury; and the question was, whether that paper was then in its original form, or had since been altered; the words, "boards [when so used, called *flash boards*,] to the height of ten inches"— appeared on the paper as an interlineation; and to prove that the interlineation had been made since the submission, the plaintiff offered the arbitrators as witnesses, who testified, that they had no knowledge or recollection that it was in the submission, when they acted as arbitrators; that according to their recollection and belief, there was no question before them about an injury from *flash boards;* nor did they hear anything about them from the parties, but estimated damages done by the permanent dam; it was held, that this testimony conduced to prove the fact for which it was offered, and was admissible.

Where it was stated, by way of recital, in a submission to arbitrators, by *A* and *B*, made in 1838, that various differences existed between them, which

took place in the month of *July*, 1834, in consequence of *B's* putting up his
mill-dam boards to the height of ten inches, which caused the water to flow
back upon *A's* lands, for which he claimed damages from *B;* the parties
binding themselves to perform the award, and agreeing that it should be final
and conclusive on them; and the arbitrators awarded a sum of money to be
paid by *B* to *A ;* in an action afterwards brought by *A* against *B*, for an
injury to *A's* land, by *B's* raising his dam in 1833, higher than he had a right
to raise it, *B* claimed, that *A* was estopped, by the submission and award,
from making this claim; it was held, that *A* was not so estopped, there not
being a single requisite of a legal estoppel.

*New-London,*
July, 1849.

Abel
*v.*
Fitch.

THIS was an action on the case, alleging, that the defend-
ant, by means of a dam on his own land, had raised the
water of a stream flowing through the adjoining land of the
plaintiffs, four feet higher than he had any right to raise it,
and thereby caused it to inundate the plaintiffs' land.

The cause was tried, on the general issue, at *Norwich,*
*March* term, 1849.

To rebut evidence introduced by the plaintiffs, tending to
prove, that the dam in question had been raised by *N. H.*
*Fitch,* the proprietor thereof, in the year 1833, to a greater
height than he had a right to raise it, the defendant offered
in evidence a writing of which the following is a copy, ac-
companied with proof that *Joseph O. Hopkins,* whose sig-
nature was thereto subscribed, was, at the time when the
water was claimed to have been raised, in the employment
of *N. H. Fitch,* having charge of the mill then upon the
premises of the defendant ; and that said *Hopkins* was now
dead.

"*Norwich, January* 14th, 1836.
*N. H. Fitch*, Esq., Sir,

In answer to your enquiries relative to raising your dam,
as near as I can recollect, it was raised, at the *North-west*
end, seventeen or eighteen inches, gradually decreasing, at
the *South-east* end, to a point, at the top of the dam.    The
end next the grist-mill was not raised any of consequence.
I should think, as near as my memory serves me, that we
did not raise it the whole length, say about three-quarters of
the dam, beginning at the end next to the iron-works, and
continuing, as above-stated, until we struck a level with the
old end near the grist-mill.    Yours, &c., *Jos. O. Hopkins.*"

To the admission of this document, as evidence of the
facts therein stated, the plaintiffs objected ; and the court
ruled it out.

For the purpose of proving that the dam had not been raised as claimed by the plaintiffs, the defendant offered in evidence, a submission and award, of which the following are substantially copies : "Whereas various differences and controversies exist between *Elijah Abel, Elijah H. Abel* and *Nehemiah H. Fitch*, all of *Bozrah*, which differences took place in the month of *July*, 1834, in consequence of said *Fitch's* putting up his mill-dam, [boards to the height of ten inches,] which caused the water to flow back upon lands which then belonged to said *Elijah Abel*, and since conveyed to *Elijah H. Abel*, son of said *Elijah*, for which they claim damages from said *Fitch:* Now, for the amicable and speedy determination of the same, we, the said *Elijah Abel, Elijah H. Abel* and *Nehemiah H. Fitch*, do hereby agree to submit and refer all controversies and matters of dispute now between us, which commenced as aforesaid and now existing up to the 1st day of *April*, 1838, to the arbitrament, determination and award of *Simeon Abel* and *Nehemiah Huntington*, both of said *Bozrah*, to be heard by them, on any day they shall appoint between this date and the 15th day of *May*, 1838.   And the said parties do hereby mutually promise and agree, and bind themselves and their heirs, to perform and execute such award as said arbitrators shall make and publish in the premises ; and that the same shall be final and conclusive on the parties, as to matters of dispute now existing between us."   Dated the 24th day of *April*, 1838 ; and signed and sealed by the parties.

"We, the undersigned, to whom the within differences were submitted, having viewed the premises of contention, and hearing the pleas of all parties therein concerned, and duly weighing and considering the same, do say, that according to our best judgment, the within named *Nehemiah H. Fitch* must pay to said *Elijah Abel* and *Elijah H. Abel*, six dollars *per annum*, for the time within specified ; which will be 22 dollars, 50 cents.   Dated at *Bozrah, May* 2d, 1838.

*Simeon Abel.*

*Nehemiah Huntington.*"

In the foregoing submission, the words within brackets were interlined, and were, as the plaintiffs claimed, inserted without the consent or knowledge of *Elijah Abel* and *Elijah H. Abel*, who had signed the submission after it was made

to the arbitrators and after their award was made. To prove this, the plaintiffs introduced the arbitrators as witnesses, who testified, that they had no knowledge or recollection that this clause was in the submission, when the matter was submitted to and heard by them ; and that, according to their recollection and belief, it was not then in the submission : that they were not called upon, by the parties to the submission, to decide, nor did they decide, as to the effect produced upon said *Abel's* land, and did not then hear or know any thing of the existence of flash boards, but estimated damages done by the dam, as it then was, and had been, used and occupied, by *N. H. Fitch ;* the *Abels* claiming, that that dam was higher than *Fitch* had right to build and maintain it.

To the admission of so much of this testimony as related to the matter heard and determined by the arbitrators, except only as it appeared in the submission and award, the defendant objected. But the court admitted it, for the purpose for which it was offered.

The defendant further claimed, and prayed the court to charge the jury, that if they should find, that the submission had been executed by the persons appearing as parties thereto, and had not been altered in the manner claimed by the plaintiffs, the legal effect of the submission would be to estop *E. H. Abel*, who had signed it, from thereafter claiming that the dam had been raised to too great a height in the year 1833.

The court did not so charge the jury, but instructed them, that the submission, if a genuine instrument, was to be considered by them, in the cause ; but if so considered by them, the plaintiff, *E. H. Abel*, was not estopped or prevented from claiming that the dam had been raised to too great a height in 1833.

The plaintiffs obtained a verdict ; and the defendant moved for a new trial.

*Rockwell* and *Foster*, in support of the motion, contended, 1. That the paper signed by *J. O. Hopkins*, was admissible. A declaration in writing, made by a person since deceased, having competent knowledge of the fact in question, which occurred in the ordinary course of his business, with no in-

terest to misrepresent, is admissible as evidence in contro-versies between third persons.   The rule excluding hearsay evidence, has many exceptions.   It is admissible, 1. in proof of public boundaries ; 2. in relation to pedigree ; 3. as part of the *res gesta ;* 4. when against the interest of the witness; 5. entries made in the regular course of business ; 6. to prove the death of a person ; 7. on the question of marriage ; 8. of legitimacy ; 9. the time of birth and age of individuals; 10. under other peculiar circumstances.   *Davies* v. *Pierce* & al., 2 *Term R.* 53.   *Holloway* v. *Rakes* and *Doe* d. *Foster* v. *Williams,* cited by *Buller,* J., *Id.* 55.   *Williams* v. *Ensign,* 4 *Conn. R.* 456.   *Doe* d. *Stansbury* v. *Arkwright,* 5 *Car. & Pa.* 575.   (24 *E. C. L.* 462.)   *Denn* d. *Pickett* v. *Pickett,* 3 *Dev.* 6, 7. per *Ruffin,* J.   *Jackson* d. *Youngs* v. *Vredenberg,* 1 *Johns. R.* 159.   *West-Cambridge* v. *Lexington,* 2 *Pick.* 536.   *Scott's* lessee v. *Ratcliffe,* 5 *Pet.* 81. 85, 6. *Lewis* v. *Marshall,* 5 *Pet.* 470.   *Jackson* d. *Miner* v. *Boneham,* 15 *Johns. R.* 226.   *Jackson* d. *The People* v. *Etz,* 5 *Cowen* 314. 319.   *Whittuck* v. *Waters,* 4 *Car. & Pa.* 375. (19 *E. C. L.* 427.)   *Fogler's* lessee v. *Simpson,* cited 2 *Dall.* 117.   *Pancoast's* lessee v. *Addison,* 1 *Har. & Johns.* 356. *Leggett* v. *Boyd,* 3 *Wend.* 376.   *Curtiss* v. *Patten,* 6 *Serg. & R.* 135.   *Herbert* v. *Tuckal,* T. *Raym.* 84., cited in *Roe* d. *Brune* v. *Rawlings,* 7 *East* 290.   *Price* v. Earl of *Torrington,* 1 *Salk.* 285., a leading case.   *Welsh* v. *Barrett,* 15 *Mass. R.* 380.   *Halliday* v. *Martinet,* 20 *Johns. R.* 168. *Augusta* v. *Windsor,* 19 *Maine R.* (1 *Appl.*) 317.   *Collins* v. *Hare,* 3 *Dow & Clarke,* 139. 145. 149.   *Middleton* v. *Melton,* 10 *B. & Cress.* 317.   (21 *E. C. L.* 84.)   *Dwight* v. *Brown,* 9 *Conn. R.* 84.   *Barker* v. *Ray,* 2 *Russ.* 63.   (3 *Cond. E. Ch. R.* 33. *n.*)   The principle of these cases is applicable to the question before the court ; and in some of them, the circumstances are similar to those in the present case.

2. That the testimony of the arbitrators, was inadmissible. In the first place, to show any matter extrinsic to the submission and award, and that the subject matter submitted and decided was different from what appeared on the submission and award, is repugnant to the rules of law regarding judgments and awards.   1 *Sw. Dig.* 471.   1 *Greenl. Ev.* §275, 6.   *Bulkley* v. *Stewart,* 1 *Day,* 130.   Secondly, the submis-

sion and award, considered simply as *writings*, cannot be varied or explained, by parol evidence. The general principle is too familiar to require a reference to authorities. And it matters not for what purpose a written instrument is offered in evidence, whether as the foundation of an action, or for any collateral purpose—the rule equally applies. *Reading* v. *Weston*, 8 *Conn. R.* 117.

3. That *E. H. Abel* was estopped from claiming that the dam had been raised to too great a height in 1833. The submission, by a just construction of it, was equivalent to an express declaration by *E. H. Abel*, that the defendant had a right to raise his dam to the height it was in 1833. *Roe* v. *Jerome*, 18 *Conn. R.* 138. 153. *Packard* v. *Sears*, 6 *Adol. & Ell.* 469. (33 *E. C. L.* 115.) *Gregg* v. *Wells*, 10 *Adol. & Ell.* 90. (37 *E. C. L.* 54.) *Watson's* exrs. v. *McLaren*, 19 *Wend.* 557. 563. *Dezell* v. *Odell*, 3 *Hill*, 216. *Bushnell* v. *Church*, 15 *Conn. R.* 406. 419, 20. *Brown* v. *Wheeler*, 17 *Conn. R.* 345. 353, 4. *Shelton* v. *Alcox*, 11 *Conn. R.* 240. *Middletown Bank* v. *Jerome*, 18 *Conn. R.* 44. *Downs* v. *Cooper*, 2 *Adol. & Ell. N. S.* 663. (42 *E. C. L.* 663.) *Welland Canal Co.* v. *Hathaway*, 8 *Wend.* 480. 483. *Swartz* v. *Moore*, 5 *Serg. & Rawle*, 257. & seq. *Gosling* v. *Birnie*, 7 *Bing.* 339. (20 *E. C. L.* 153.) *Hawes* v. *Watson*. 2 *B. & Cress.* 540. (9 *E. C. L.* 170.) *Chapman* v. *Searle*, 3 *Pick.* 38. *Stephens* v. *Baird*, 9 *Cowen*, 274. *Wallis* v. *Truesdell*, 6 *Pick.* 455. *Hall* & ux. v. *White*, 3 *Car. & Pa.* 136. (14 *E. C. L.* 242.) It makes no difference whether the misrepresentation proceeded from mistake or design. *Doe* d. *Eyre* v. *Lambly*, 2 *Esp. R.* 635. *Liggins* v. *Inze*, 7 *Bing.* 682. (20 *E. C. L.* 287.)

*Strong* and *Wait*, contra, contended, 1. That the letter of *J. O. Hopkins* was not admissible in evidence. In the first place, this was mere hearsay as to the height of the dam then built, compared with the former dam. It related to no mark or bound, known by him, or then claimed to be the limit of the defendant's right. Secondly, *Hopkins* had no such means of knowledge of the height of the dam as would make his declaration or hearsay evidence, more than that of any other individual called upon to express an opinion. Thirdly, this was hearsay *post litem motam*, and for that reason not admissible. 1 *Greenl. Ev.* §131. & seq.

2. That the testimony of the arbitrators was properly admitted for the purpose for which it was offered ; not to contradict or explain the submission, but to show what it really was, which was acted upon by them.   The defendant having introduced the submission, with the clause as to the flash boards interlined, thus containing *prima facie* evidence of the alteration, upon the face of the instrument, and the arbitrators having testified, that according to their recollection and belief, this clause was not in the submission, when acted upon by them ; to confirm this, they might properly testify, that they were not called upon to decide, and did not decide, as to any effect produced by the flash boards.

3. That if this submission and award were genuine instruments, as shown on the trial, they constituted no *estoppel ;* and the defendant had all the benefit of every presumption to be derived from them, short of this.   There was neither submission nor award as to the height of the dam.   As to this, the arbitrators had no authority to enquire ; nor did the parties agree, except as the arbitrators were to enquire as to the effect of the flash boards alone.   There was nothing to prevent the parties agreeing between themselves as to this, or referring it to other arbitrators.

ELLSWORTH, J.   We think the paper signed by *J. O. Hopkins,* offered in evidence by the defendant, is clearly inadmissible.   It is nothing more than the opinion of a deceased man, given three years after this dam was built, as to what was its height when built, he then being miller.   And further, this opinion is drawn from *Hopkins,* by the defendant, some two years after the dispute commenced.   The submission speaks of the dispute as existing in 1834, and the writing of *Hopkins* is dated *January,* 1836.

Doubtless, entries and admissions of deceased people are, in some cases, admissible.   But the evidence now offered, does not belong to that class.   Entries by persons since deceased, having full and peculiar means of knowledge, made at the time, in the regular course of business, in the usual and proper place and manner, especially, if in the discharge of one's duty, are admissible to the jury, as a part of the *res gesta.*   So admissions of a deceased man, made against his interest, or by an agent, constituting or qualifying the trans-

action enquired after, may go to the jury ; but the opinion of *Hopkins* has none of these qualities, nor is it accompanied with any of the safeguards of such evidence. It does not differ from the opinion or remark of any other person, deceased, who was acquainted with the subject matter in controversy.

*New-London,*
July, 1849.

Abel
*v.*
Fitch.

We think the court did right in admitting the testimony of *S. Abel* and *N. Huntington.* The question was, whether the submission or paper signed by the parties submitting their differences to these arbitrators, was in its original form, or had been altered; and particularly, whether the words " *boards to the height of ten inches,*" which appeared to be interlined, had not been added since the submssion and award. To prove that they had, the plaintiffs introduced the arbitrators, who testified, they had no knowledge or recollection that this interlineation was in the submission when they acted as arbitrators;—that according to their recollection and belief, there was no question before them about an injury from flash boards; nor did they hear any thing about them from the parties, but arbitrated only upon the effects of the permanent dam. This testimony conduced to prove the fact for which it was offered.

Nor is there any force in the claim that this submission and award, if unaltered, constitute an estoppel upon the plaintiffs, or either of them, as to the height of the old dam. The claim made, is, that *Elijah Abel* and *Elijah H. Abel,* in that arbitration, submitted no claim for damages done, otherwise than by the "*flash boards,*" and therefore, the dam itself had not been raised too high in 1833, and the plaintiffs were estopped claiming it had been. A strange estoppel indeed, if the only question submitted was, the amount of injury done by " flash boards !" The award has not a single requisite of a legal estoppel. The jury were permitted to draw such inferences as they pleased from the omission, if there was any ; but that did not make the proceeding an estoppel. At most, the height of the permanent dam was passed by, and not made the subject of award. The plaintiffs might not then have supposed the permanent dam had been raised ; or

the parties might have agreed as to so much, and that matter might have been designedly omitted.

We do not advise a new trial.

In this opinion the other Judges concurred.

New trial not to be granted.