KNUT OLSEN, Appellee, v. ARLIN C. OLSEN et al., Appellants.

No. 46634.

MAY 8, 1945.

M. L. Mason and M. C. Coughlon, both of Mason City, for appellants.

John A. Senneff, of Mason City, for appellee.

MILLER, J.— ■ This is an action to quiet title to a farm, a quarter section in Cerro Gordo county, and to certain personal property on the farm, or, in the alternative, to impress a lien on the land for improvements placed thereon by the plaintiff. Certain facts are undisputed or so clearly established as to be treated as verities by us. A statement of such facts will clarify the issues presented by the rather voluminous pleadings herein. Such facts are as follows: Plaintiff, a farmer, was born in Norway, was seventy years old at the time of trial, was uneducated, could not read or write except to sign his name; his wife, Aleta B. Olsen, was deceased at the time of trial; four children had survived her, Mildred Van Laere, Gladys Olsen, Clare Olsen, and Arlin C. Olsen; the farm in question had been purchased by plaintiff from his parents; he owned it when, at twenty-seven, he married Aleta; in 1932, plaintiff was ill, thought that he was going to die, and executed a deed to the farm to his wife, Aleta, so that, in the event of his death, she could continue to farm it and would not be embarrassed by having the title thereto divided between herself and the children; plaintiff recovered and continued to farm the land as his own; in 1942, Aleta became ill and executed to plaintiff two deeds, one to certain land in Hancock County, Iowa, in which she had an undivided one-eighth interest subject to a life estate, and the other to certain property in Wisconsin

in which she had an undivided one-fifth interest; these deeds did not include, in the property conveyed, the quarter section in Cerro Gordo county; after their mother's death, two of the children, Gladys and Clare, conveyed to plaintiff any interest they might have in the farm. The defendants are Arlin C. Olsen, son, and Mildred Van Laere, daughter of plaintiff, August Van Laere, husband of Mildred, and C. I. Snyder, administrator of Aleta Olsen's estate.

It was the contention of plaintiff and the trial court found that the evidence established: That the conveyance of the farm by plaintiff to his wife, Aleta, in 1932 was made with no consideration being paid by her therefor, pursuant to an agreement that, in case plaintiff regained his health the farm would be deeded back to him; that, at the time Aleta executed the deeds in 1942, she intended to convey all of her property to plaintiff; the deeds which were prepared for her were believed to convey all of her land to plaintiff; the farm in Cerro Gordo county was not included in the deeds by oversight and mistake; the evidence is clear, satisfactory, and convincing as to Aleta's intention and that an oversight or mistake occurred; that the personal property on the farm was owned by plaintiff, was never formally transferred to Aleta; Aleta listed the property as her own; if a transfer to her could be created by conduct or admissions, her claim of title thereto was abandoned as early as September 1941. Pursuant to such findings, the trial court entered a decree quieting title to the personal property and to the Cerro Gordo county farm in plaintiff. The defendants appeal from such decree. They assert eleven assignments of error. We will first consider those assignments which relate to that part of the decree which quieted title to the farm in plaintiff.

I. As far as the action to quiet title to the farm is concerned, relief was granted under the authority of a court of equity to reform written instruments. Plaintiff's theory is: That in 1932 he made an oral contract with his wife, the terms of which were that he would convey the farm to her and, if he recovered from his illness, she would reconvey the farm to him; he performed his part of the agreement in 1932 by conveying the farm to her; she undertook to perform her part of the

agreement in 1942 by executing two deeds, which she intended, and the parties believed, to convey to plaintiff all of her property; by oversight or mistake the deeds failed to include, in the description of the property conveyed, the Cerro Gordo county farm. The decree in effect reformed the deeds of 1942 by treating them as a conveyance of the Cerro Gordo county farm to correct such oversight or mistake.

Counsel for plaintiff cites, as authority for the decree herein, our decision in Kessler v. Terrell, 192 Iowa 442, 447, 185 N. W. 15, 17. In that case a deed failed to properly describe the property the grantor intended to convey. He refused to execute a correction deed. The grantee brought an action to quiet title. The grantor cross-petitioned to have title quieted in him. The court dismissed the grantee's petition and entered a decree in favor of the grantor on his cross-petition. On appeal, this court reversed the decree and ordered that the grantee be given the relief demanded in her petition, stating as follows:

"We do not believe that, under these circumstances, the appellee is now in a position to take advantage of the fact that the deed contained an erroneous description of the premises. It is not to be forgotten that he testified that he executed the deed for the purpose of conveying the interest that he had in the property he had received from his grandfather. Upon his own evidence, a court of equity would have been warranted in reforming the deed, to correct the misdescription of the premises. This proceeding to quiet the title is, in effect, no more than an action for reformation of the deed, in regard to the description of the property."

The foregoing pronouncement clearly sustains the trial court insofar as its power to act is concerned. The question still remains whether the record supports the findings and decree.

II. Counsel for defendant do not meet the theory of the plaintiff and the trial court but treat the action as one which seeks to vary the terms of the deed of 1932 by adding thereto provisions for a reversion of the title conveyed in the event of the happening of a condition subsequent. A large number of authorities under the parol-evidence rule are

cited in support of their contentions. It is not necessary to discuss or decide such contentions. They have no bearing on the issue before us. We have held repeatedly that, in a proper case for the reformation of a written instrument, the parol-evidence rule has no application.

In re Estate of Simplot, 215 Iowa 578, 581, 246 N. W. 396, 397, we stated:

"The parties agree in the broad statement of the rule which forbids the acceptance of parol evidence to contradict or vary the terms of a written contract. Their disagreement arises over the application of the rule and over the so-called 'exceptions' to the rule. * * * These so-called 'exceptions' may be classified in the main as follows:

"1. The rule has no application to suits in equity for reformation of written contracts. Parol evidence is always admissible in such a case."

In Wormer v. Gilchrist, 210 Iowa 463, 466, 230 N. W. 856, 858, we stated:

"The well settled rule that parol evidence cannot be invoked to vary the terms of a contract has no application to prevent proof of a mistake or reform an instrument to correct the mistake. Greiner v. Swartz, 167 Iowa 543. See, also, Good Milking Mach. Co. v. Galloway, 168 Iowa 550; Bonbright v. Bonbright, 123 Iowa 305; Hausbrandt v. Hofler, 117 Iowa 103; Lee & Jamieson v. Percival, 85 Iowa 639; Stafford v. Fetters, 55 Iowa 484."

The cases above quoted and cited definitely establish the rule in this jurisdiction. Accordingly, defendants'. assignments of error Nos. I, II, III, IV, V, VI, and IX need be given no further attention by us.

III. Defendants' assignments of error Nos. VII and VIII challenge the competency of plaintiff's evidence to establish the basis for reformation of the 1942 deeds.

Henry Curvo, a lawyer, prepared for Aleta Olsen and at her request the two deeds in 1942, Exhibit Z being the deed to the Wisconsin property and Exhibit Z-1 being the deed to the

Hancock county property. He testified as to the nature of his employment as follows:

"Q. * * * did she ask you for any advice, or anything of that kind, Mr. Curvo? A. No, sir, nothing. Q. And at her request, you merely prepared these deeds? A. Yes, sir. Q. And that is all that you did do? A. Yes, sir."

Numerous objections were made to his testimony as being privileged. Under this record the objections were not well grounded.

In Mueller v. Batcheler, 131 Iowa 650, 652, 653, 109 N. W. 186, 187, we stated:

"Over defendant's objections, the court received the testimony of one Damon, an attorney, who drew up the instruments of mutual conveyance and sale, as to the conversations in his presence between William C. Knight and his wife relating to the purposes for which these conveyances were made, and the oral promises of the parties to transfer to plaintiff all property of the survivor. But the conversations and communications to which the testimony of the witness related do not appear to have been by way of consultation with, or the procuring of advice from, Damon as a lawyer, but for the purpose of instructing him as to the drafting of the instruments which he was called upon to prepare for the purpose of carrying out the intention of the parties already formed. No communications seem to have been made to him as an attorney or legal adviser. He was simply called upon as a scrivener or conveyancer to prepare the particular instruments. Indeed, he does not seem to have been consulted with reference to the form of the instruments to be adopted in carrying out the purposes of the parties, nor as to their legal effect. It is clear under the authorities that an attorney acting as a mere scrivener in the preparation of instruments under directions given to him is not within the scope of the rule excluding the testimony of an attorney as to privileged communications. Toms v. Beebe, 90 Iowa, 612; Theisen v. Dayton, 82 Iowa, 74; Wasson v. Millsap, 77 Iowa, 762; Smith v. Long, 106 Ill. 485; Hebbard v. Haughian, 70 N. Y. 54; Childs v. Merrill, 66 Vt. 302 (29 Atl. 532); O'Brien

v. Spalding, 102 Ga. 490 (31 S. E. 100, 66 Am. St. Rep. 202 and note) ; 4 Wigmore, Evidence, section 2297."

The foregoing pronouncement has been repeatedly adhered to by this court. Conway v. Rock, 139 Iowa 162, 165, 117 N. W. 273; Stoddard v. Kendall, 140 Iowa 688, 692, 119 N. W. 138; Ball v. James, 176 Iowa 647, 657, 158 N. W. 684; Crawford v. Raible, 206 Iowa 732, 740, 221 N. W. 474. Under such decisions Mr. Curvo, as a mere scrivener in the preparation of the instruments, was not within the rule excluding the testimony of an attorney as to privileged communications.

IV. Defendants challenged in the court below and inferentially in this court the competency of plaintiff's daughter, Gladys Olsen, who was present and heard a conversation between Mr. Curvo and her mother, the objection being based on the dead man statute. Gladys testified as follows:

"Q. Now at the time that Mr. Curvo came out there first and your mother said that she wanted to turn all her property over to your father, Knut Olsen, were you in the same room they were while Mr. Curvo was there at that time? A. Yes, sir, I was there in the room with them until he left. Q. And did you take any part in the talk that was had at that time between your mother and Mr. Curvo? A. No, sir, not at all."

The objection of defendants was not well grounded under the rule applied by us in Diesing v. Spencer, 221 Iowa 1143, 1145, 1146, 266 N. W. 567, 569, wherein we stated:

"Under the record as presented, the court was not in error in admitting the testimony, because, as we have frequently held, witnesses who are incompetent, under the Dead Man's Statute (Code 1935, section 11257), to testify as to conversations between the witness and the deceased person, are not incompetent to testify as to statements made by the deceased person in conversations with other persons, in which the witness took no part. Sweezey v. Collins, 40 Iowa 540; Steen v. Steen, 169 Iowa 264, 151 N. W. 115; Peck v. Foggy, 199 Iowa 922, 202 N. W. 754."

V. Plaintiff testified to certain transactions with his

wife, to which no objection was made. Such testimony was competent, in the absence of an objection, under the rule applied by us in Slattery v. Slattery, 120 Iowa 717, 723, 95 N. W. 201, 202, wherein we stated:

"The effect of the statute is to make the witness incompetent to testify. There is no provision holding that the evidence of such witness is not competent if admitted without objection made at the time when offered."

VI. Counsel for plaintiff challenges the sufficiency and timeliness of some of the objections interposed by defendants. It is not necessary to pass upon such contentions because there was sufficient evidence that was competent under Divisions III, IV, and V of this opinion to establish the facts found by the trial court. The following testimony is illustrative:

Plaintiff testified, without objection, as follows:

"I was sick in the year 1932. I had yellow jaundice and hiccoughs. I was sick practically all that summer and was under the doctor's care. I thought I was going to die during that sickness. It was for that reason that I deeded the farm in question to my wife. * * * Q. Now * * * at the time that you gave this deed to your wife when you were sick in 1932, had your wife said that if you lived she would deed the farm back to you? A. Yes, sir. * * * After I got well in 1933 I went about the business in connection with the farm, looking after things generally, farming the place until my wife died."

Mr. Curvo testified:

"Q. Did you know that she had an interest in this land involved here? A. I did not. Q. But did you then know that she had an interest in property in Hancock County and in Wisconsin? A. Yes. Q. Now when you were out there the first time, Mrs. Olsen at that time told you what she wanted, and what she wanted you to do at that time? A. Yes, sir,— Q. And,— A. —she said that she wanted to deed all her property to her husband, Knut Olsen. * * * Q. And after being merely told that she wanted to see you, and going out there, what was it that she then told you she wanted, Mrs. Olsen? A.

After I got out there, Mrs. Olsen then told me that she wanted to turn all her property over to her husband, Knut Olsen, and that she wanted me to prepare deeds for her to deed all her property to her husband, Knut Olsen. Q. And did you then go back to town? A. Yes, sir. Q. And did you after returning to town then look up the description of the Hancock County property in which Mrs. Olsen had an interest? A. Yes, sir. Q. And also look up the description of the property in Wisconsin in which you knew she had an interest? A. Yes, sir * * *."

Gladys Olsen testified:

"Q. State what you heard your mother say to Mr. Curvo? * * * A. That she wanted to turn all her property over to father; that is what she said."

As above stated, plaintiff could not read or write except to sign his name. He testified that he thought that the deeds in 1942 conveyed to him all of his wife's real estate. The case would seem to be analogous to that of Rankin v. Taylor, 204 Iowa 384, 388, 389, 214 N. W. 725, 728, wherein we affirmed a decree which reformed a deed to include omitted property, and stated:

"So far as appellee, Rankin, and appellant Taylor, are concerned, it was their intention to mortgage the entire property. Mistake alone prevented such accomplishment, and the error was mutual. There was no negligence on the part of said Rankin.

"The record will now be considered. concerning the appellant Mayme Taylor, who was the wife of appellant Taylor at the time said property was purchased from Knox and the said house erected. * * * She intended, as disclosed by all the facts, that the omitted property should have been covered by the Rankin mortgage. It was not embodied, because the scrivener used an erroneous legal description. That intention was likewise the intention of her husband and Rankin. The mistake was mutual. Appellee fully met the burden of proof, notwithstanding the denials of appellants."

VII. Defendants' tenth assignment is based on the assertion:

"It is well understood that an instrument will not be reformed on the ground of mistake, unless the mistake was mutual."

Adams v. Iowa Gas & Elec. Co., 200 Iowa 782, 786, 203 N. W. 229, 231, 205 N. W. 368, is cited in support of this contention and so holds. However, the evidence herein supports the court's finding that both plaintiff and his wife thought that the deeds in 1942 conveyed all of the wife's property to plaintiff. There was a mutual mistake. Equity has the power to reform an instrument to correct a mutual mistake. Milligan Co. v. Lott, 220 Iowa 1043, 1045, 1046, 263 N. W. 262, and cases cited therein.

VIII. Defendants' eleventh and final assignment pertains to that part of the decree which quieted title to the personal property as well as the real estate. It is contended that plaintiff is estopped to claim title to either the realty or the personal property by reason of certain transactions had with the Federal Land Bank in 1936 wherein it was made to appear that the farm and the personalty belonged to Mrs. Olsen. However, the record supports the trial court's finding that any apparent ownership of the personalty by Mrs. Olsen had been abandoned by her as early as September 1941, and the deeds that are here subjected to reformation were not executed until 1942.

Also the estoppel is based upon alleged admissions to third parties and there is no evidence that defendants acted thereon to their prejudice. In Fryer v. Harker, 142 Iowa 708, 712, 713, 121 N. W. 526, 527, 23 L. R. A., N. S., 477, we stated:

"As.to these matters we may say that, although defendant argues an estoppel on plaintiff due to his admissions to third parties, the case lacks one of the essential elements of such an estoppel; that is to say, there is no showing that defendant knew of these declarations, or that he acted thereon to his prejudice."

By reason of the foregoing, we find no merit in any of the propositions which have been asserted as grounds for a reversal herein. The evidence fully sustains the decree as to

the facts upon which relief was predicated. The court correctly applied the law to such facts. The decree is—Affirmed.

HALE, C. J., and OLIVER, GARFIELD, WENNERSTRUM, SMITH, MANTZ, and MULRONEY, JJ., concur.

BLISS, J., takes no part.